GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

EDMUND K. SAFFERY          5860-0
    esaffery@goodsill.com
WAYNE R. WAGNER          10012-0
    wwagner@goodsill.com
First Hawaiian Center, Suite 1600
999 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 547-5600
Facsimile:  (808) 547-5880

Attorneys for Plaintiff
Penn-Star Insurance Company

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PENN-STAR INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>        vs.<br><br><br>YI-SUN CHIU; CHRISTY ZHENG LEI; MR. CHIU CONSTRUCTION LLC,<br><br>                    Defendants. | CIVIL NO. _____<br>(DECLARATORY JUDGMENT)<br><br>COMPLAINT FOR DECLARATORY JUDGMENT; SUMMONS |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now Plaintiff PENN-STAR INSURANCE COMPANY ("PENN-STAR"), by and through its counsel, GOODSILL ANDERSON QUINN & STIFEL, and for its Complaint for Declaratory Judgment against the above-named Defendants, alleges and avers as follows:

## PARTIES, JURISDICTION AND VENUE

1.      This case involves an action for declaratory relief and to resolve an actual controversy between the parties as set forth herein.

2.      Plaintiff PENN-STAR is a stock company incorporated in the State of Pennsylvania with its principal place of business in Bala Cynwyd, Pennsylvania.

3.      Upon information and belief, Defendant YI-SUN CHIU ("CHIU"), at all times relevant, was and continues to be a resident of the State of Hawaiʻi who conducted substantial and systematic business in the State of Hawaiʻi, including specific business activities in the State of Hawaiʻi from which this action arises as set forth herein.

4.      Defendant CHRISTY ZHENG LEI ("LEI"), at all times relevant, was and continues to be a resident of the State of Hawaiʻi who conducted substantial and systematic business in the State of Hawaiʻi, including specific

business activities in the State of Hawaiʻi from which this action arises as set forth herein.

5.     Upon information and belief, Defendant MR. CHIU CONSTRUCTION LLC ("CHIU CONSTRUCTION"), is a member-managed limited liability company incorporated in the State of Hawaiʻi with CHIU as its sole member.  At all times relevant herein, CHIU CONSTRUCTION conducted substantial and systematic business in the State of Hawaiʻi.

6.     There is complete diversity of citizenship between PENN-STAR and Defendants, and the amount in controversy herein exceeds $75,000. Accordingly, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

7.     PENN-STAR seeks a declaration by this Court pursuant to 28 U.S.C. § 2201 that it has no obligation under any of the Commercial General Liability Policies issued by PENN-STAR for successive periods from January 29, 2013 to the present (hereinafter referred to as "Each Policy" or "Policies"), to defend or indemnify Defendants, for claims asserted against them in the lawsuit captioned *Galia Oyama et al. v. Yi-Sun Chiu, et al.*, Civil No. 1CCV-21-0000227 ), currently pending in the Circuit Court of the First Circuit, State of Hawaiʻi ("Lawsuit").

8.     There is an actual and continuing controversy between PENN-STAR and Defendants, in that Defendants allege PENN-STAR is obligated, under the aforementioned Policies, to defend and indemnify them against the claims asserted in the Lawsuit.

9.     All or a substantial portion of the events giving rise to this action occurred within the City and County of Honolulu, State of Hawaiʻi.

10.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### Overview of the Puu Panini Villa Condominium Project

11.     In February 2014, LEI and a Plaintiff in the Lawsuit, Galia Oyama, purchased a parcel located at 4156 Puu Panini Avenue, Honolulu, Hawaiʻi 96816 that would become the Puu Panini Villa Project ("Project").  The parcel included one preexisting residence that was demolished so the property could be developed into an eight-home condominium property regime.

12.     In exchange for Galia Oyama's fronting most of the money to purchase the parcel, LEI and CHIU agreed to assume full responsibility for developing the parcel and building the eight new homes, including all development and construction costs to complete the Project.

13.     By 2016, Galia Oyama and CHIU had agreed to terminate their joint ownership of the Project.  On July 22, 2016, they entered a Settlement

4

Agreement and Release ("Settlement Agreement"), signed by Galia Oyama, LEI, and CHIU, providing that Galia Oyama would receive $3,637,286.00 and the residence at 4162 A Puu Panini Avenue, Honolulu, Hawai'i 96816; TMK No. (1) 3-2-061-042-0005 (the "Oyama Property"), in satisfaction of all monies and loans to LEI and in exchange for agreeing to convey Galia Oyama's fifty-percent (50%) interest in the Project to LEI.  Under the Settlement Agreement, Galia Oyama agreed to take title and ownership of the Oyama Property in "As Is" and "Where Is" condition, accepting "full responsibility for any and all interior improvements made or construction work she will do to the 4162 A Unit."  Ownership of the Oyama Property would be transferred after the Developer's Public Report was issued.

14.   On August 12, 2016, ownership of the Project Property was formally transferred to LEI and CHIU, pursuant to the Settlement Agreement, by way of quitclaim deed from LEI and Galia Oyama, recorded as Document No. A-60790314.

15.   On November 14, 2017, the "Puu Panini Villa" Condominium Project was subsequently established by the "Declaration of Condominium Property Regime of Puu Panini Villa," recorded as Document No. A-65290750, as amended by the "First Amendment to Declaration of Condominium Property

Regime of Puu Panini Villa," dated April 17, 2018, and recorded as Document No. A-66810635.

### The Oyama Property

16.     Prior to the Settlement Agreement, CHIU and LEI were responsible for and oversaw construction on the home that would become the Oyama Property.  Various subcontractors assisted CHIU and LEI in the development and construction of the Oyama Property.

17.     By the time the Settlement Agreement was executed on July 22, 2016, CHIU and LEI had already overseen the completion of about 60% of the Oyama Property, including exterior painting and installation of the interior framing and drywall.  Unfinished work included a small portion of the roof above a patio, installation of the flooring, kitchen cabinets, painting of the drywall, bedroom closets, and the shower tiles and toilets.

18.     The parties agreed that CHIU would remain on the building permit for the Oyama Property, with CHIU and his subcontractors continuing to perform certain work in connection with the Oyama Property in 2017 and 2018, including all common element exterior work and utility connections, which included the driveway, the concrete slab of the back porch, and the yard work.

19.     After the Settlement Agreement was executed, the Oyamas retained another construction company, HM Construction, to take over as general

contractor to complete construction on the rest of the Oyama Property.  However, HM Construction did not begin work until on or about March 21, 2018.

20.     Between March and August of 2018, Galia Oyama discovered the following alleged defects:  defective driveway (discovered in March 2018); defective framing and drywall (discovered in August 2018), cracked beam in back patio (discovered in August 2018), and cracked concrete slab by entry (discovered in August 2018).

21.     On October 11, 2018, ownership of the Oyama Property was transferred by way of Limited Warranty Condominium Deed, Document No. A-68660231, to Mark Lee Oyama (undivided 33% interest), Ann Chiang Oyama (undivided 33% interest), Craig David Oyama (undivided 33% interest) and Galia Yu-Lee (undivided 1% interest), as tenants in common (hereinafter collectively referred to as the "Oyamas").

22.     On November 7, 2018, the Honolulu Department of Planning and Permitting received notification of a change in general contractor from CHIU to HM Construction, Inc. for the Oyama Property.

23.     On July 31, 2019, Galia Oyama wrote to CHIU and LEI regarding the aforementioned defects with the Oyama Property and demanding that CHIU and LEI pay for their repair.  CHIU declined.

24.     On or about July 2019, HM Construction remediated the alleged defects for which the Oyamas paid approximately $80,000.00.

## The Shimizu Property

25.     Construction of another residence at 4162 D Puu Panini Avenue, Honolulu, Hawai'i 96816; TMK No. (1) 3-2-061-042-0008 (the "Shimizu Property"), was commenced by CHIU and LEI around August 2016.  Various subcontractors performed work on the Shimizu Property.

26.     In March of 2018, while Cy and Margaret Shimizu (the "Shimizus") were still negotiating with CHIU and LEI to purchase the property at 4162 D Puu Panini Avenue, the Shimizus' home inspector notified the Shimizus of several defects, including defective bannister railing on the stairs, defective installation of a shower door, defective installation of the dishwasher, substandard painting throughout the home, and a defective concrete driveway patch.  These defects were set forth in a home inspection report, dated March 13, 2018.

27.     In April of 2018, prior to closing, the Shimizus' realtor notified LEI and CHIU that the Shimizus had "outstanding concerns" regarding the above defects.

28.     On April 20, 2018, ownership of the Shimizu Property was transferred to the Shimizus, by Limited Warranty Condominium Deed, Document No. A-66910144.  Although the Limited Warranty Condominium Deed provided a

1-year warranty on materials and workmanship, covering (1) faulty workmanship and materials, (2) defects in fixtures and equipment, (3) defects in wiring and piping in electrical and plumbing systems, and (4) major structural defects, the parties negotiated that the Shimizus would accept a $7,000 credit at closing for the "outstanding concerns" raised by their realtor prior to closing.

29.     Sometime in 2019, the Shimizus allegedly discovered a termite infestation.

30.     On June 1, 2020, the City and County of Honolulu's Department of Planning and Permitting issued a Notice of Violation (Violation No. 2020/NOV-05/177) to the Shimizus for illegal grading.  The Notice stated that the Shimizus would be assessed a daily fine of $50.00, until corrective action was completed.  However, upon information and belief, to date, no fines have been imposed because CHIU obtained an active grading permit to correct the issue.

## The Oyamas' and Shimizus' November 18, 2020 Demand Letter

31.     On November 18, 2020, the attorney for the Oyamas and Shimizus sent CHIU and LEI a demand letter and notice of claim pursuant to HRS Chapter 672E, the Hawaii Contractor Repair Act[1] ("November 18, 2020 Demand Letter").  The Oyamas' and Shimizus' November 18, 2020 Demand Letter provided a draft of the Complaint eventually filed in the Lawsuit, noted the defects described above, and stated that suit would be filed in 90 days if a resolution was not reached.  The November 18, 2020 Demand Letter also warned that the Oyamas and Shimizus would seek treble and punitive damages, as well as fees and costs, if they were forced to file suit.

32.     Apparently unable to reach a resolution, the Oyamas and Shimizus initiated the Lawsuit on March 1, 2021 by filing their Complaint against Defendants CHIU, LEI, and CHIU CONSTRUCTION.

## Factual Allegations in The Complaint

33.     Consistent with the above facts, the Complaint alleges that Galia Oyama, Mark Oyama, Ann Oyama, Craig Oyama, Cy Shimizu, and Margaret Shimizu (collectively "Oyama/Shimizu Plaintiffs") are owners of real

---

[1]     The Hawaii Contractor Repair Act requires a claimant to provide written notice of a claim at least 90 days before filing suit in order to give the contractor the opportunity to remediate the work and avoid additional expenses and damages related to litigation.  HRS § 672E-3.

property at 4162 A and 4162 D  Puu Panini Avenue, respectively, situated in the condominium project known as Puu Panini Villa, and that CHIU and CHIU CONSTRUCTION acted as the general contractor on the Project.

34.    The Complaint alleged that Defendants CHIU, CHIU CONSTRUCTION, and LEI were responsible for defective framing, drywall and taping at the Oyama property, which caused extensive cracking that required replacement, and also responsible for defects in the concrete slabs in the driveway, front entrance and rear patio.

35.    The Complaint also alleged that CHIU, CHIU CONSTRUCTION, and LEI were responsible for several defects in the Shimizu property, including poor installation of appliances and defective shower doors, a continuing termite infestation in the cabinets, and illegal grading of their property resulting in a Notice of Violation from the City & County of Honolulu on June 1, 2020, assessing a daily fine of $50.00 for the continuing violation.

36.    The Complaint further alleged that CHIU, CHIU CONSTRUCTION, and LEI breached written and verbal promises to the Oyama/Shimizu Plaintiffs that they would perform the required repairs and satisfy all of their foregoing obligations.

37.    The Complaint alleged that, as a result of CHIU's, CHIU CONSTRUCTION's, and LEI's acts and omissions, the Oyama/Shimizu Plaintiffs

have suffered emotional, physical, and monetary damages, including but not limited to repair costs for damage to the Oyama/Shimizu Plaintiffs' respective properties.

38.    In their prayer for relief, the Oyama/Shimizu Plaintiffs request an order directing CHIU, CHIU CONSTRUCTION, and LEI to fulfill each contractual obligation and promise, as well as an award of actual, special, contemporary, consequential and/or incidental damages, treble damages pursuant to HRS § 480-13(a)(1), punitive damages, pre- and post-judgment interest, and attorney's fees.

### Procedural History and CHIU's and LEI's Late Notice and Tender

39.    CHIU and LEI apparently tendered the claim to Underwriters Specialty Insurance Company ("Underwriters Specialty") under a policy issued by Underwriters Specialty, who retained counsel for CHIU and LEI.

40.    Shortly after the filing of the Lawsuit, CHIU and LEI's counsel filed a responsive pleading on their behalf.  However, it appears that Underwriters Specialty did not retain counsel on behalf of CHIU CONSTRUCTION.  No responsive pleading was filed on behalf of CHIU CONSTRUCTION, which, as a result, had default judgment entered against it on or about May 24, 2021.

41.    On January 24, 2022, nearly a year after the lawsuit was filed, CHIU and LEI tendered their defense to PENN-STAR against the claims alleged in

the Lawsuit, via letter from their litigation counsel, dated January 19, 2022.  This was the first notice PENN-STAR received in connection with the underlying events, demands, or claims relating to this Lawsuit.

42.     PENN-STAR is defending CHIU and LEI in the Lawsuit subject to a full and complete reservation of its rights under the Policies.

**The PENN-STAR Policies**

43.     PENN-STAR issued nine Commercial General Liability Policies to CHIU for successive periods from January 29, 2013 to the present.[2]

44.     Each Policy provides that PENN-STAR will have the right and duty to defend the insured(s) against any "suit" seeking" damages for "property damage"; however, PENN-STAR will have no duty to defend the insured(s) against any "suit" seeking damages for "property damage" to which this insurance does not apply.  The Policies contain commercial general liability coverage with $2,000,000 policy aggregates, and with limits of liability in the amount of $2,000,000 for products-completed operations and $1,000,000.00 per occurrence.

45.     Each Policy lists CHIU as the sole "Named Insured," and provides in relevant part:

**SECTION II - WHO IS AN INSURED**

---

[2]     The Policies generally have identical coverage.  Relevant differences, if any, will be noted herein when necessary.

1.  If you are designated in the Declarations as:

    a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

*****

LEI is listed as an Additional Insured on the 2015-2016 and 2017-2018 PENN-STAR Policies.

46.    None of the Policies list CHIU CONSTRUCTION as an insured in the Declarations or on any Additional Insured endorsements.  Each Policy additionally provides that "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."

47.    The Policies also contain the same notice requirements.  The notice requirements under Section IV.2 provide that the insured(s) must notify PENN-STAR "as soon as practicable of an 'occurrence' or an offense which may result in a claim"; as well as notify PENN-STAR immediately of a claim or suit brought against any insured(s).

48.    The Policies contain several exclusions applicable to this matter, including without limitation a "Limited Exclusion – Condominium, Cooperative, Town House, Row House, Tract House, Mixed Use, or Conversion" which provides, in relevant part:

I.   This insurance does not apply to:

   A. "bodily injury" or "property damage" to or arising out of "your work" or "your product" when such work or product is part of or is incorporated into any "condominium", "cooperative", "town house", "row house", "tract house", "condominium conversion", "cooperative conversion", "mixed use project", and any such structure qualifies as "newly built";

   B. "bodily Injury" or "property damage" to or arising out of "your work" or "your product" when such work or product is part of or incorporated into "common areas" associated with any structure listed in Paragraph A., above.

II.   This exclusion does not apply to "bodily injury" or "property damage" arising out of "your work" or "your product" when such work or product is part of or is incorporated in ten (10) or less "tract houses" qualifying as "newly built", and provided that the "tract house development project" size conditions cited in A. and B. of this paragraph are both met:

   A. The ten (10) or less "tract houses" are built in a "tract house development project" comprised of a piece or parcel of land subdivided into ten (10) or less lots, parcels, or other, or other divisions of land, for the development/building and sale of ten (10) or less freestanding one, two, three or four family dwellings; and

   B. The ten (10) or less "tract houses" are not a part of or incorporated into any larger "tract house development project" comprised of a piece or parcel of land subdivided into more than ten (10) lots, parcels, or other divisions of land, for the development/building and sale of more than ten (10) freestanding one, two, three or four family dwellings.

      ….

IV.   The following is added to SECTION V - DEFINITIONS:

      ….

   C.   "Condominium" means a form of residential property ownership in

which each owner holds title to his/her individual unit, plus a fractional interest in the common areas of the multi-unit project.

….

H.   "Newly built" means a structure never previously occupied, except in the case of a "condominium conversion" where the converted "condominium" unit was never previously occupied as a condominium or a "cooperative conversion" where the "cooperative" was never previously occupied as a "cooperative".

….

K.   "Tract house" is a house that is part of a "tract house development project".

L.   "Tract house development project" is comprised of a piece or parcel of land subdivided into lots, parcels, or other divisions of land, for the development/building and sale of freestanding one, two, three or four family dwellings.

All other terms and conditions of the policy apply.

*****

49.   The Policies also contain an "Exterior Insulation and Finish System" endorsement, which provides, in relevant part, as follows:

A.   This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1.   The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

16

   **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

*****

The Policies define "exterior insulation and finish system" as:

a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

   **1.**  A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

   **2.**  The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

   **3.**  A reinforced or unreinforced base coat;

   **4.**  A finish coat providing surface texture to which color may be added; and

   **5.**  Any flashing, caulking or sealant used with the system for any purpose[.]

   50.   In addition, the Policies contain a "Total Exclusion – Professional Services", which provides:

   **I.**  With respect to "professional services" the following exclusion is added to Paragraph **2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

   This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to "wrongful acts".

17

**II.** As used in this endorsement the following definitions are added to **SECTION V – DEFINITIONS**

**A.** "Professional services" means any and all services performed for others requiring special skills, experience and knowledge.

**B.** "Wrongful act" means any actual or alleged negligent act, error, omission, misstatement, or misleading statement committed by the insured or by any other person or entity for which the insured is legally liable in the performance of or failure to perform "professional services".

51. Section I of the Policies contain several other applicable

exclusions, including without limitation  Exclusions 2b, 2j, and 2l:

52. Exclusion 2b states in relevant part:

**2. Exclusions**

This insurance does not apply to:

….

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement[.]

\*\*\*\*\*

53. Exclusion 2j states as follows:

18

**2. Exclusions**

This insurance does not apply to:

    ….

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

    ….

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;

    ….

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    ….

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

                    *****

54.    Exclusion 2l states as follows:

**2. Exclusions**

This insurance does not apply to:

....

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products - completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

*\*\*\*\*\**

55.     Each Policy also contains an "other insurance" provision which provides that each Policy's coverage is excess over other collectible insurance. Section IV(4)(b)(1) of the Policies state, in relevant part:

(1) This insurance is excess over:

(a)  Any  of  the  other  insurance,  whether  primary, excess,  contingent  or  on  any  other  basis:

(i)  That  is  Fire,  Extended  Coverage, Builder's Risk,  Installation  Risk  or similar coverage for "your work";

(ii)  That  is  Fire  insurance  for  premises rented  to you  or  temporarily occupied  by  you  with permission  of the owner;

(iii)  That  is  insurance  purchased  by  you  to  cover your  liability  as  a  tenant  for "property  damage" to  premises  rented  to  you  or  temporarily

occupied by you with permission of the owner; or

....

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A or B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

*****

## STATEMENT OF CLAIM

56. PENN-STAR repeats, reiterates and realleges each and every allegation contained in paragraphs 1-55 above as though fully set forth herein.

57. Coverage under the PENN-STAR Policies for the claims alleged against the Defendants in the Lawsuit, which is currently pending in the Circuit Court of the First Circuit of the State of Hawai'i, is precluded in its entirety on the grounds as set forth below.

58. The Policies' "Limited Exclusion – Condominium, Cooperative, Town House, Row House, Tract House, Mixed Use, or Conversion" precludes coverage for the following reasons:

21

A.      This "Limited Exclusion – Condominium, Cooperative, Town House, Row House, Tract House, Mixed Use, or Conversion" precludes coverage for property damage to or arising out of "Your Work"[3] on a newly built condominium property.

B.      As alleged in the Complaint, the property damage to the Oyama and Shimizu Properties arose from work or operations performed by or on CHIU's behalf, in other words, "Your work".  In addition, the public records such as the limited warranty condominium deeds for the Oyama and Shimizu Properties, recorded as Document No. A-60790314 and Document No. A-68660231, respectively, and the "Declaration of Condominium Property Regime of Puu Panini Villa, recorded as Document No. A-66810635, indicate that the Puu Panini Project is a condominium property regime, as also alleged in the Complaint.  The Oyama Property and Shimizu Property also were "newly built," as shown by publicly available property records indicating the structures for the Oyama and Shimizu Properties were

---

[3]      Under Section V.22, "Your work" means "(1) work or operations performed by you [i.e., CHIU] or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations[… and] includes (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and (2) The providing of or failure to provide warnings or instructions."

built in and around 2016 on a lot that had been previously vacant except for a demolished structure.

   C. Given the foregoing, it is clear that PENN-STAR is entitled to a declaration that the Policies' "Limited Exclusion – Condominium, Cooperative, Town House, Row House, Tract House, Mixed Use, or Conversion" precludes coverage in its entirety.

   59. Coverage under the PENN-STAR Policies for the claims alleged in the Lawsuit is further precluded under the Policies' Notice of Occurrence, Claim, or Suit provisions for the following reasons:

   A. The Policies' notice requirements obligated CHIU to notify PENN-STAR "as soon as practicable of an 'occurrence' or an offense which may result in a claim" as well as a claim or "suit" brought against Chiu.

   B. In 2018 and 2019, CHIU was warned by the Oyamas and Shimizus of the various construction issues, but failed to notify PENN-STAR as required by the Policies

   C. On or around November 18, 2020, the Oyamas and Shimizus placed CHIU and LEI on notice of a potential lawsuit by way of their November 18, 2020 Demand Letter, sent pursuant to the Hawaii Contractor Repair Act, HRS chapter 672E.  In accordance with Hawaii law,

the letter was intended to provide CHIU with the opportunity to remediate

the work, so as to avoid unnecessary expenses and liability related to

litigation.

D.     The Oyamas and Shimizus filed the Lawsuit on March 1,

2021.

E.     CHIU and LEI unreasonably waited over one year after

receiving written notice of a potential lawsuit and waited almost a full year

after the Lawsuit was filed to first notify PENN-STAR of the potential

occurrence(s), claim(s), and suit via their letter of tender dated January 24,

2022.

F.     PENN-STAR was substantially prejudiced because, had

CHIU and LEI provided timely notice of this matter to PENN-STAR, the

dispute could have been resolved for a smaller sum, including lower costs

of repair.  Under these circumstances, CHIU and/or LEI materially

breached the Policy conditions by failing to timely notify PENN-STAR of

the November 18, 2020 Demand Letter prior to the Lawsuit, and again by

failing to timely notify PENN-STAR of this matter immediately after the

Lawsuit was filed, which breaches resulted in substantial prejudice to PENN-STAR.

G.    Moreover, PENN-STAR is not responsible for any defense costs that have been incurred by CHIU and LEI prior to PENN-STAR's having received notice of the Lawsuit on or about January 24, 2022.

60.    Alternatively, coverage under the PENN-STAR Policies for the claims alleged in the Lawsuit is precluded by Exclusion 2j(1) of the Policies for the following reasons:

A.    Exclusion 2j(1) excludes damage that occurs to property that CHIU owned at the time that the property damage occurred.  Under Exclusion 2j, this insurance does not apply to "property damage" to "Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair,

replacement, enhancement, restoration or maintenance of such property for any reason…[.]"

B.    CHIU and LEI owned the Oyama Property until Oct. 11, 2018, when they transferred title to the Oyamas via limited warranty condominium deed.

C.    The Oyamas admit that they discovered the property damage at issue in March and August 2018 (defective driveway (discovered in March 2018), defective framing and drywall (discovered in August 2018), cracked beam in back patio (discovered in August 2018), and cracked concrete slab by entry (discovered in August 2018), in other words, while CHIU and LEI still owned the property.  Given the foregoing, Exclusion 2j excludes damage to the Oyama property because the property damage took place when CHIU still owned the property.

D.    Similarly, CHIU and LEI owned the Shimizu Property until April 20, 2018, when they transferred title via limited warranty condominium deed.  As the facts described above show, the Shimizus identified the property damage, apart from the grading violation and termite infestation, prior to CHIU and LEI's transfer of ownership to them in April 2018.  In addition, upon information and belief, the defective grading and termite infestation of the Shimizu Property occurred prior to

26

the transfer of title.  These circumstances indicate that Exclusion 2j

excludes damage to the Shimizu property because the property damage

took place when CHIU still owned the property.

61.   Alternatively, coverage under the PENN-STAR Policies for the

claims alleged in the Lawsuit is precluded by Subparagraphs (5) and (6) of

Exclusion 2j, which preclude coverage for property damage to

> "[t]hat particular part of real property on which you or any contractors
>
> or subcontractors working directly or indirectly on your behalf are
>
> performing operations, if the "property damage" arises out of those
>
> operations"; or
>
> ….
>
> "[t]hat particular part of any property that must be restored, repaired
>
> or replaced because 'your work' was incorrectly performed on it," so
>
> long as the "property damage" is not included in the "products
>
> completed operations hazard".

62.   Coverage under the PENN-STAR Policies for the claims

alleged in the Lawsuit is further precluded by Exclusion 2l of the Policies relating

to "Damage To Your Work" to the extent that the property damage arose out of

CHIU's work on the property after CHIU's work was completed or abandoned.

63.     Coverage under the PENN-STAR Policies for the claims alleged in the Lawsuit is also precluded by the Exterior Insulation and Finish System Exclusion.  This exclusion precludes coverage for property damage to a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure.  Under this exclusion, the PENN-STAR Policies do not provide coverage for property damage arising from the drywall cracking and defective framing to the Oyama Property.

64.     Coverage under the PENN-STAR Policies for the claims alleged in the Lawsuit is also precluded by the "Total Exclusion – Professional Services" Exclusion insofar as the alleged damage is based on services performed requiring special skills, experience and knowledge, such as the surveying and grading of the Shimizu Property, as well as other professional services relating to the construction and development of the Oyama and Shimizu Properties.

65.     Coverage under the PENN-STAR Policies for the claims alleged in the Lawsuit is also precluded by Exclusion 2b relating to contractual liability insofar as CHIU and LEI breached various contractual requirements, including by refusing to perform repair work as promised.

66.     Coverage under the PENN-STAR Policies for the claims alleged against CHIU CONSTRUCTION is precluded because CHIU CONSTRUCTION is not an "Insured", including an "Additional Insured", under

the Policies. Even if CHIU CONSTRUCTION were an Insured or Additional Insured under the Policies, coverage would be precluded for all of the reasons set forth herein.

67. Coverage under the PENN-STAR Policies for the claims alleged in the Lawsuit is also precluded to the extent the coverage, if any, provided by the PENN-STAR Policies is "excess" to any other insurance available to Defendants, including the insurance available to Defendants under the Underwriters Specialty policy which, upon information and belief, has been providing a defense to CHIU and LEI since the Lawsuit was filed.

68. The PENN-STAR Policies do not provide coverage for punitive damages.

69. The PENN-STAR Policies also do not provide coverage insofar as the Lawsuit seeks injunctive relief in the form of an order directing Defendants to fulfill each contractual obligation and promise they made to the Oyamas and Shimizus.

70. Coverage is or may be precluded by other provisions or exclusions contained in the PENN-STAR Policies.

WHEREFORE, PENN-STAR PLEADS FOR RELIEF AS FOLLOWS:

A.      For a declaratory judgment by this Court finding that PENN-STAR has no duty to defend or indemnify Defendants for the claims asserted in the Lawsuit.

B.      For reimbursement of defense costs incurred to date by PENN-STAR in defending Defendants against the claims alleged in the Lawsuit.

C.      For reimbursement of any amounts paid by PENN-STAR in judgment or settlement of the claims alleged against Defendants in the Lawsuit.

D.      For PENN-STAR's attorneys' fees and costs incurred in this declaratory judgment action.

E.      For such other relief as the Court may deem just and appropriate under the circumstances.

DATED:  Honolulu, Hawaii, August 15, 2022.


/s/ *Wayne R. Wagner*
EDMUND K. SAFFERY
WAYNE R. WAGNER

Attorneys for Plaintiff
PENN-STAR INSURANCE
COMPANY